UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ALYSON GEOFFRION,                    )
                                     )
         Plaintiff                   )
                                     )
v.                                   )    No. 2:16-cv-00596-JAW
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social Security, )
                                     )
         Defendant                   )

REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable, as of December 31, 2006, her date last insured for SSD benefits, of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ ignored a treating physician's opinion in finding that she had no severe physical impairment as of her date last insured and assessed a mental residual functional capacity ("RFC") unsupported by substantial evidence after rejecting the opinion of her treating psychiatrist and ignoring the opinion of her treating therapist. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 3-13. I agree that remand is warranted on the basis of the ALJ's error in assessing the plaintiff's

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

mental RFC. Accordingly, I recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2006, Finding 1, Record at 16; that, through her date last insured, she had a severe impairment of affective disorder, Finding 3, *id.*; that, through her date last insured, she had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: she was able to maintain concentration and attention sufficient to perform uncomplicated work tasks over an eight-hour workday, assuming short work breaks on average every two hours, was able to interact with the public on an occasional basis, provided the interaction did not require more than an exchange of non-personal work-related information or a hand-off of products or materials, could work in the presence of co-workers and engage in appropriate occasional interaction but could not work in the context of a work team where work-related interaction with co-workers would have been frequent or continuous, and could deal appropriately with supervisors on an occasional basis, but not where monitoring and intervention by supervisors would have been physically close and/or frequent or continuous, Finding 5, *id.* at 19; that, considering her age (42 years old, defined as a younger individual, on her date last insured), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could have performed, Findings 7-10, *id.* at 27; and that she, therefore, had not been disabled at any time from August 11, 2006, her alleged onset date of disability, through December 31, 2006, her date last insured for SSD benefits, Finding 11, *id.* at 28. The Appeals Council declined to review the

decision, *id*. at 3-5, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The record before the ALJ contained sharply conflicting opinions as to the severity and effects of the plaintiff's mental impairments as of her date last insured for SSD benefits, December 31, 2006. Two agency nonexamining consultants deemed her affective and anxiety-related disorders nonsevere as of her date last insured. *See* Record at 85-86 (January 2, 2014, opinion of Lewis F. Lester, Ph.D.), 94-95 (July 17, 2014, opinion of Thomas Knox, Ph.D.). By contrast, the plaintiff's longtime treating psychiatrist, Michael R. Patnaude, D.O., and her treating counselor, Holly Briggs, LCPC-C, completed Mental Residual Functional Capacity ("MRFC") Questionnaires on May 5, 2014, and June 13, 2014, respectively, assessing a number of marked limitations in her mental capacity to perform even unskilled work. *See id*. at 679-88.

Dr. Patnaude, for example, indicated that the plaintiff was unable to meet competitive standards in her ability to perform at a consistent pace without an unreasonable number and length of rest periods, while Briggs indicated that she had no useful ability to accomplish that task. *See id.* at 681, 686. Both Dr. Patnaude and Briggs indicated that their responses to the MRFC Questionnaire reflected their professional opinions as to the plaintiff's limitations since August 11, 2006. *See id.* at 683, 688.

Dr. Patnaude supplemented his opinion with an undated letter to the plaintiff's attorney, received by the commissioner on August 24, 2015, summarizing his history of treatment of the plaintiff and expressing the opinion that, prior to her date last insured, the plaintiff was not capable of working. *See id.* at 696-99 (stating, *inter alia*, that, following plaintiff's psychiatric hospitalization in 2006, "my goal has been to try to keep her sufficiently stable that she could remain in the community and not return to the hospital[,]" "[w]hile I have occasionally hoped that we might reach a point where she could return to full time work, we have never reached a point where that was a realistic goal[,]" and the plaintiff "has been very emotionally decompensated most of the time").

The ALJ rejected both the Patnaude opinion that the plaintiff had disabling limitations as of her date last insured and those of Drs. Lester and Knox that she had no severe mental impairment as of that date. *See id.* at 25-27. He ignored the Briggs opinion. *See id.* at 16-27. He then assessed the mental RFC at issue. *See* Finding 5, *id.* at 19. He found, based on testimony of a vocational expert present at the plaintiff's hearing, that a person with the posited mental RFC could perform jobs existing in significant numbers in the national economy. *See id.* at 28, 66-68.

The plaintiff argues that the ALJ committed reversible error in (i) rejecting the Patnaude opinion without good reason, (ii) ignoring the Briggs opinion, and (iii) "formulat[ing] his own

unsupported lay assessment of the medical evidence to create a mental RFC." Statement of Errors at 7-12 (citing *Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017)).

The commissioner rejoins that, while "the ALJ did not rely on a medical opinion from a State agency consultant before assessing Plaintiff's RFC, . . . he explained why he assessed specific limitations that he did." Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 12. She adds that any error was harmless because, once the ALJ supplied good reasons for rejecting the Patnaude opinion, he went on to assess a mental RFC more favorable than the evidence otherwise supported. *See id.* (citing *Gonsalves v. Astrue*, Civil No. 09-181-BW, 2010 WL 1935753, at *6 (D. Me. May 10, 2010) (rec. dec., *aff'd* June 16, 2010)).

Even assuming, *arguendo*, that the ALJ supplied the requisite good reasons for rejecting the Patnaude opinion and made reasonably clear that, had he addressed the Briggs opinion, he would have rejected it for the same reasons, I agree with the plaintiff that he erred in crafting a mental RFC determination without sufficient explanation and that was not more favorable than the evidence otherwise supported.

First, the ALJ did not explain why he assessed the mental limitations at issue. He only generally explained that, while the record did not reveal that the plaintiff had suffered debilitating depression, "[t]hose limitations that are supported by objective treatment records from that period have been incorporated into her [RFC] at finding #5, above." Record at 26. He also stated, in the context of determining at Step 2 that the plaintiff had no more than moderate limitations in social functioning, that he had taken her allegations of irritability into consideration in formulating her RFC. *See id.* at 17. Yet, he never explained how he derived any specific limitations from the objective treatment records or the plaintiff's testimony. *See id.* at 17-27; *see also, e.g., Caudle v.*

5

*Colvin*, No. 1:15-cv-201-JHR, 2016 WL 1734074, at *6 (D. Me. Apr. 29, 2016) ("commissioner's argument that [ALJ] permissibly assessed claimant's mental RFC as of a remote date last insured might have proved persuasive had [he] clarified how [he] derived the specific components of her RFC from disparate sources, including portions of a mental status examination report, but [he] did not") (citation and internal punctuation omitted); *compare, e.g.*, *Starrett v. Colvin*, No. 2:14-cv-152-JHR, 2015 WL 3966127, at *4 (D. Me. June 29, 2015) (ALJ did not err when he "expressly stated that he deviated from the expert opinions, restricting the [claimant] to work at a sedentary exertional level, based on [the claimant's] work history and his credible testimony that he found the construction and forklift jobs to be too physically strenuous.") (citation and internal punctuation omitted).

To the extent that the ALJ based his mental RFC determination on his lay interpretation of the objective evidence rather than crediting the plaintiff's subjective allegations, he exceeded his competence as a layperson, assessing limitations that were not susceptible to commonsense judgments. *See, e.g., Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record.").

Second, the ALJ's mental RFC determination was not more favorable than the evidence would support. Although the ALJ assigned no specific weight to the Lester and Knox opinions, he made clear that he rejected them, stating that he had incorporated limitations "supported by objective treatment records" from the remote period at issue. Record at 26. Those records, however, were susceptible of differing interpretations: Dr. Patnaude, who authored several of the

relevant notes from the period prior to the plaintiff's date last insured, maintained that she had suffered from disabling mental limitations as of that time. *See id*. at 679-83, 696-99.

As in *Staples*, in so doing, the ALJ in effect conceded that the Lester and Knox opinions could not stand as substantial evidence of the plaintiff's mental RFC. *See Staples*, 2017 WL 1011426, at *5. "Thus, instead of assessing a mental RFC that gave the plaintiff 'the benefit of the doubt' or otherwise was more favorable than the remaining evidence would support, the [ALJ] . . . assessed an RFC unsupported by substantial evidence." *Id*. (citation omitted).[2]

"That, in turn, undermined the relevance of the vocational expert testimony on which the [ALJ] relied to meet the commissioner's Step 5 burden that a person with the posited RFC could perform jobs existing in significant numbers in the national economy, warranting reversal and remand." *Id*. at *6; *Arocho v. Sec'y of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).[3]

---

[2] *Gonsalves* is distinguishable. In that, in that case, the plaintiff provided no authority for the proposition that the ALJ erred in assessing a physical RFC without reliance on expert opinion, and the court rejected his argument that the opinion of an agency nonexamining consultant that he had no physical limitations could not stand as substantial evidence of the severity of his physical impairments. *See Gonsalves*, 2010 WL 1935753, at *6. Against that backdrop, the court found, "It is true that the [ALJ's] opinion does not provide any analysis of medical evidence to support a limitation to light work prior to [the claimant's date last insured], but that error can only be read, given the state of the record, to be favorable to the [claimant], assigning him a more restricted residual physical capacity than, as the [claimant] himself points out, is justified by the medical evidence.").

[3] I do not address whether remand is required on the basis of the ALJ's failure to address a Medical Source Statement of Ability To Do Work-Related Activities (Physical) completed on September 11, 2014, by treating physician Eric Haskell, D.O. *See* Statement of Errors at 3-6; Record at 16-27, 689-92. However, as counsel for the commissioner conceded at oral argument, remand typically is required when an ALJ ignores a treating physician's opinion. *See, e.g., Prior v. Colvin*, No. 16-cv-00237-DBH, 2016 WL 7441610, at *3 (D. Me. Dec. 26, 2016) (rec. dec., *aff'd* Jan. 13, 2017) ("[T]his court has held that, in circumstances in which a treating physician has offered a material opinion conflicting with the finding of an [ALJ], a failure to address that opinion warrants remand.") (citations omitted). While the commissioner argues that the error was harmless, *see* Opposition at 3-6, I see no reason why, if the court agrees that remand is otherwise warranted, the error should not be rectified on remand.

7

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of November, 2017.

        /s/ John H. Rich III
        John H. Rich III
        United States Magistrate Judge